UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM CAIRNS,<br><br>    Plaintiff,<br><br>v.<br><br>IDAHO FALLS SCHOOL DISTRICT NO. 91,<br><br>    Defendant. | Case No. 4:18-cv-00564-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are two motions in limine filed by Plaintiff William Cairns. The first of these motions is titled as a "Motion in Limine to Exclude Defendant from Using the One-Year Renewable Contract to Limit Any Back Pay Award." (Dkt. 51). For the reasons explained below, the Court will deny this motion. The Court does not intend to instruct the jury that it is bound to follow Idaho statutory law or that it is bound by the terms of a one-year contract in determining any back pay award. But the Defendant may nevertheless argue that a one-year contract is the appropriate measure for a back pay award.

The second motion is titled as a "Motion in Limine to Redact Retirement Income Amounts" (Dkt. 77). For the reasons explained below, the Court will grant

this motion.

As with all rulings on motions in limine, the parties should be aware that these rulings are provisional and therefore "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a motion in limine ruling. *See Luce v. United States*, 469 U.S. 38, 41 (1984) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## BACKGROUND

Trial in this matter is set for October 18, 2021.

Plaintiff William Cairns alleges that the School District discriminated against him based on age when it (1) failed to renew his Retired Administrator Contract for the 2018-2019 school year and (2) failed to hire him for his previous position or any other positions for which he applied.

In July 2017, Cairns retired from the Idaho Falls School District. This was a soft retirement, however, as Cairns planned to continue working for the District for another two to four years. His plan was to begin collecting his state retirement benefits (PERSI) and to simultaneously draw a salary from the District under a

renewable one-year contract. *See generally* Idaho Code § 33-1004H. The idea was to sock away some extra cash before retiring for good. Accordingly, immediately after Cairns resigned from his tenured position, he signed a one-year, renewable "Retired Administrator Contract" contract. *See Plaintiff's Trial Br.*, Dkt. 60, at 3; *see also Aug. 10, 2017 Contract,* Dkt. 23, at 87.

Before he retired and signed this contract, Cairns discussed his plan with George Boland, who, at the time, was the District's Superintendent. According to Cairns, Boland promised him that so long as Cairns didn't mess up, he would be able to continue serving under renewable administrator contracts. *Compl.*, Dkt. 1, ¶¶ 12-18.

Things didn't go to plan. In early 2018, the Skyline High School principal, Aaron Jarnagin, asked Cairns how long he planned to continue working. Cairns said he planned to continue working for another two to four years, so long as he was in good health. Jarnagin told Cairns that he did not plan to renew Cairns's contract for the following year because he wanted someone with more longevity. And, in fact, Jarnagin did not renew Cairns contract.

Even though Cairns's contract was not renewed, he applied for his old job – Skyline High's athletic director – when it posted. He did not get the job. Nor did he get any other open administrator jobs within the district.

In December 2018, Cairns sued the School District. He alleges two claims:

(1) violation of the federal Age Discrimination in Employment Act; and (2) violation of the Idaho Human Rights Act. Cairns is pursuing two theories: First, he says the School District improperly failed to renew his retired administrator contract. Second, he says the School District improperly failed to hire him for other positions he sought.

## LEGAL STANDARD

There is no express authority for motions in limine in either the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Nevertheless, these motions are well recognized in practice and by case law. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 (2000). They key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984). A ruling on a motion in limine is essentially a preliminary ruling, which may be reconsidered in the context of trial. *Id.* at 41.

Motions in limine are beneficial tools that promote judicial efficiency by presenting the Court with an opportunity "to rule in advance of trial on the relevance of certain forecasted evidence . . . without lengthy argument at, or interruption of, the trial." *D.A. v. Meridian Joint Sch. Dist. No. 2*, No. 1:11-CV-00119-CWD, 2013 WL 12147769, at *2 (D. Idaho June 14, 2013) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). But these pretrial evidentiary rulings are made before the court has seen or heard the challenged

evidence, and they restrict a party's presentation of their case. *Id.* Thus, "courts have recognized that motions in limine should be granted sparingly and only in those instances when the evidence plainly is inadmissible on all potential grounds." *Id.* (cleaned up).

## DISCUSSION

### A. Back Pay Award Limitations

To prevail on his discrimination claims at trial, Cairns must prove three elements by a preponderance of the evidence:

(1) The School District took an adverse employment action against him;

(2) Cairns was 40 or older at the time of the adverse employment action; and

(3) The School District either (a) failed to renew his administrator contract or (b) failed to hire him for another position because of his age. That is, but for his age, the School District would have either renewed his administrator contract or hired him for another position.

*See generally Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *see also Ninth Circuit Model Civil Jury Inst. No. 11.1* (citing cases).

In an earlier order, this Court concluded that although the Ninth Circuit has yet to address the issue, non-renewal of a fixed-term contract can constitute an adverse employment action. *See May 14, 2020 Order,* Dkt. 33, at 11. Cairns now argues that as a consequence of that ruling, the School District cannot

**MEMORANDUM DECISION AND ORDER - 5**

even *argue* that Cairns's back pay award, if any, is limited to a one-year contract term. *See Motion,* Dkt. 51, at 2. Rather, Cairns says that if the jury finds the District discriminated against him based on his age, then "he should be entitled to the same measure of damages for any employee who successfully demonstrates a discriminatory failure to hire claim." *Id.*

The Court is not persuaded. Granted, the jury in this case may ultimately find that the District failed to renew Cairns's administrator contract because of his age. But even so, the jury would still have to determine precisely how much damage the District caused, and plaintiff has the burden of proving both the existence and the amount of back pay. More specifically, even assuming it finds liability, the jury would still need to decide if the School District caused damage for a period longer than a one-year contract term. In essence, the plaintiff would need to persuade the jury that but for the school district's discriminatory animus, it would have routinely renewed the plaintiff's one-year contract term. *See generally Walker v. Ford Motor Co.*, 684 F.2d 1355, 1361 (11th Cir. 1982) (recognizing that when an employee claims backpay for a period beyond a fixed-term agreement, the essential issue raised is one of causation). This concept is reflected in the Ninth Circuit pattern jury instruction No. 11.13 – which plaintiff has requested. That instruction provides, in relevant part, as follows:

If you find for the plaintiff on any of the plaintiff's claims, you must

determine the plaintiff's damages for each of those claims. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury *you find was caused by the defendant.*

*See Ninth Circuit Model Jury Instruction No. 11.13, Age Discrimination—Damages—Back Pay—Mitigation* (emphasis added; citing various Ninth Circuit authorities).

The defense will of course have the opportunity to come forward with evidence that the plaintiff would not have remained in employment beyond a given contract term, and that it would not have renewed the plaintiff's contract in the ordinary course. The Eleventh Circuit recognized this concept in *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1361 (11th Cir. 1982) – a case plaintiff relies upon. *See Plaintiff's Motion,* Dkt. 51, at 4.

In *Walker,* a black man entered Ford Motor Company's 18-month dealership training program, which included an $1,500-per-month stipend. He was terminated before the 18-month program ended and filed a Title VII action, claiming racial discrimination. The district court found Ford guilty of retaliatory discharge and awarded Walker reinstatement, or, alternatively, backpay for the remainder of the training period. Relevant to the point under discussion here, the district court denied any further backpay, reasoning that because the program had a fixed term of 18 months, Walker was not entitled to any compensation beyond that 18-month

period. *Id.* at 1360.

The *Walker* court disagreed with the district court's "superficial" reasoning on that point. *Id.* As the circuit explained:

> [T]he mere fact that the training agreement was for a fixed term did not *automatically* end Ford's liability. On the contrary, our cases have recognized that even employees hired for fixed terms *may be* entitled to backpay from the date of the adverse employment action until reinstatement.

*Id.* (emphasis added).

Two central teachings of *Walker* – which this Court finds persuasive – are: (1) the amount of a back pay award, if any, will depend on the facts; and (2) both the employer and the employee have an opportunity to put on evidence related to whether the plaintiff would have remained employed for longer than a fixed contractual term. Here is how the *Walker* court described the shifting burdens of proof in the context of a fixed-term contract:

> … a plaintiff must initially introduce some evidence showing that the economic injury resulting from the discharge extended beyond the employment term. . . . [T]his proof may consist of no more than a showing that a particular plaintiff's contract had been renewed in the past, that contracts of similarly situated employees had been renewed, or that the employer had made a promise of continued employment. *Once plaintiff carries this burden, and thus . . . establishes damages resulting from the discriminatory acts, then the burden shifts to the defendant to show by a preponderance of the evidence that the plaintiff would not have remained in employment beyond the contract term.*

684 F.2d at 1362 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 8**

Plaintiff apparently agrees with this analytical construct as he proposed jury instructions picking up this language. *See Plaintiff's Proposed Jury Instruction No. 26*, Dkt. 64 (citing *Walker*, 684 F.2d 1344 and *Keller v. Bd. of Educ.*, 182 F. Supp. 2d 1148 (D.N.M. 2001)). But in his pending motion, Cairns nevertheless argues that the District should be not able to argue that a one-year contract is the appropriate measure of any backpay award.

The Court disagrees. The District will be allowed to put on evidence and make arguments in an effort to show that Cairns would not have remained in the job beyond a one-year term. That evidence may include relevant Idaho statutory and regulatory law, the terms of the contracts Walker would have been hired under, and the District's treatment of other similarly situated administrators and teachers.[1]

To be sure, the Court does not intend to instruct the jury that it is bound to follow Idaho statutes and regulations. *See, e.g., Defendants' Proposed Instruction Nos. 13 & 14*, Dkts. 58-13 & 58-14.[2] Nor will it instruct the jury that it is bound to a one-year term in determining damages. After all, as plaintiff points out, this is a

---

[1] The Court will evaluate whether any specific statutes or regulations are relevant in the context of trial. At this time, however, the Court will observe that regulations that were propounded in 2021 – after the relevant time frame here – would not appear relevant.

[2] The Court has not finally decided how to instruct the jury. At this point, however, defendants should be aware that the Court is not persuaded to include these proffered instructions.

**MEMORANDUM DECISION AND ORDER - 9**

federal antidiscrimination lawsuit; it is not a breach-of-contract suit, and, further, the jury is not bound by state law. But, still, defense witnesses will be allowed to explain relevant Idaho statutory and regulatory backdrop in the context of explaining how it would have decided to renew Cairns's contracts on a year-to-year basis. As the School District has recognized, the jury ultimately may not agree with its arguments, but it is entitled to offer evidence and argument on this score. The court will therefore deny Plaintiff's Motion in Limine to Exclude Defendant From Using the One-Year Renewable Contract to Limit Any Back Pay Award.

### B.  Evidence of PERSI Income Amounts

Next up is Plaintiff's Motion related to the amount of Cairns's PERSI income. Cairns received PERSI retirement income during and after the events at issue in this case. The School District contends that evidence of the amount of this income should be admitted so that the jury can evaluate the damages on Cairns's failure to hire claim. *See Defendant's Response*, Dkt. 78, at 5. The Court agrees with the District that the PERSI income *may* be relevant to the damages, if any, that Cairns is ultimately awarded on this claim.  However, this will depend on the evidence at trial – specifically whether Cairns's separate earnings would have been reduced in some way because he was "double-dipping" by simultaneously receiving PERSI income.  This commonly occurs in the setting of social security benefits, where moneys earned by retirees may reduce their social security income.

However, in the absence of a similar set-off or adjustment under PERSI, the evidence of the amounts of PERSI income would be irrelevant to Cairns's claim for damages.

Accordingly, the Court will conditionally grant plaintiff's motion in limine to exclude evidence of Cairns's PERSI income.  If evidence is presented that Cairns's earnings would reduce his PERSI income, the Court will reconsider and admit the evidence.  Of course, the parties may resolve the issue by stipulating to the amount of the set-off, in which case evidence of the actual PERSI income would not be necessary.

The District further argues that the jury cannot properly evaluate Cairns's emotional distress claims without the PERSI income amounts. *See Defendant's Response*, Dkt. 78 at 5. The Court disagrees, for now. Cairns's trial brief discusses "emotional distress damages caused by the District's actions and Boland's betrayal of his promise." *Plaintiff's Trial Brief*, Dkt. 60, at 10. The brief further explains that "[t]he District's actions caused Cairns both significant financial and emotional harm." *Id.* Because Cairns's claim for emotional distress is broader than financial hardship, the Court will grant the motion. However, the Court may reconsider the issue in the context of trial, as the evidence develops regarding Cairns's emotional distress, including the centrality of financial hardship.

## ORDER

**IT IS ORDERED** that:

1. Plaintiff's Motion in Limine to Exclude Defendant from Using the One-Year Renewable Contract to Limit Any Back Pay Award (Dkt. 51) is **DENIED**.

2. Plaintiff's Motion in Limine to Redact Retirement Income Amounts (Dkt. 77) is **GRANTED**, subject to the limitations stated in this decision.

DATED: October 15, 2021

B. Lynn Winmill
U.S. District Court Judge