UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM CAIRNS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IDAHO FALLS SCHOOL DISTRICT NO. 91,<br><br>　　　　Defendant. | Case No. 4:18-cv-00564-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Plaintiff William Cairns retired from the Idaho Falls School District 91 in July 2017. For Mr. Cairns, however, this was only a quasi-retirement, because he planned to continue working for the District for another two to four years. His plan was to begin collecting his state retirement benefits and to simultaneously draw a salary from the District under a series of one-year contracts. Immediately after Mr. Cairns resigned from his tenured position, he signed a one-year, renewable "Retired Administrator Contract" contract.

Before he retired and signed this contract, Mr. Cairns discussed his plan with George Boland, who, at the time, was the District's Superintendent. According to

Mr. Cairns, Mr. Boland promised him that so long as Mr. Cairns didn't mess up, he would be able to continue serving under a series of one-year Retired Administrator Contracts.

Things didn't go as planned. In early 2018, the Skyline High School principal, Aaron Jarnagin, told Mr. Cairns that he did not plan to offer Mr. Cairns a new Retired Administrator Contract for the following year because he wanted someone with more longevity. Mr. Jarnagin said he would open the athletic director position for other applicants, but that Mr. Cairns could apply for his old job. Mr. Cairns did so, but did not get the job. Nor did he get any other open administrator jobs within the district.

In December 2018, Cairns sued the District. He alleged two claims: (1) violation of the federal Age Discrimination in Employment Act; and (2) violation of the Idaho Human Rights Act.

A five-day jury trial began on October 18, 2021. At trial, Cairns pursued two theories. First, he argued the District discriminated against him based on age when it failed to offer him a new Retired Administrator Contract. Second, he claimed the District discriminated against him based on age when it failed to hire him for his previous position or any other positions for which he applied. The jury heard testimony from relevant witnesses, including Mr. Cairns, Dr. Sarah Sanders

**MEMORANDUM DECISION AND ORDER - 2**

Jarnagin, Mr. Boland, and Mr. Jarnagin. The jury returned a verdict for the District.

Mr. Cairns now asks for another shot. He moves for a new trial on three grounds: (1) the verdict was based on false, surprise testimony, (2) the jury should have been instructed on causation under the ADEA prior to deliberation, and (3) the verdict was against the clear weight of the evidence. For the reasons discussed below, the Court will deny Mr. Cairns's motion for a new trial (Dkt 110).

## LEGAL STANDARD

Under Rule 59, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

A verdict that "is based upon false or perjurious evidence" is one reason to grant a Rule 59 motion. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Similarly, evidence that unfairly surprises a party may warrant a new trial. *See Phillips v. IRS*, 144 F.R.D. 107, 109 (D. Haw. 1992) ("[T]he error of surprising a litigant with new evidence is sufficient to grant a new trial."); *Ruiz v. Hamburg-American Line*, 478 F.2d 29, 32-33 (9th Cir. 1973) ("Some courts have gone so far as to hold that failure to disclose a defense before trial" and the subsequent justifiable surprise at trial to the opposing party "warrants a new trial."). *See also Crowley v. EpiCept* Corp., 883 F.3d 739, 751 (9th Cir. 2018)

("Under Rule 59, a court may grant a new trial . . . . to prevent a miscarriage of justice.").

The Court may also grant a Rule 59 motion if the verdict is contrary to the clear weight of the evidence. *Crowley*, 883 F.3d at 751. When considering a motion for a new trial on this basis, "[a] jury verdict should be set aside only when the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) (internal quotations omitted). "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

"Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). The burden of proving the need for a new trial lies with the party bringing the motion.

## DISCUSSION

### A. Jury Instructions

Mr. Cairns argues that the Court should grant his motion for a new trial because the jury should have been instructed on causation under the ADEA prior to

**MEMORANDUM DECISION AND ORDER - 4**

deliberation.

Under Rule 51(c)(1), "a party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "If a party does not properly object to jury instructions before the district court, [a court] may only consider 'a plain error in the instructions that . . . affects substantial rights.'" *Hunter v. Cnty. Of Sacramento*, 652 F.3d 1225, 1230 (9th Cir. 2011) (quoting Fed. R. Civ. P. 51(d)(2)). To establish plain error in the context of civil jury instructions, the objecting party must show (1) there was an error; (2) the error was obvious; and (3) the error affected substantial rights. *C.B. v. City of Sonora*, 769 F.3d 1005, 1018-19 (9th Cir. 2014).

Here, Mr. Cairns failed to object to the Court's decision not to give a proposed jury instruction regarding causation. A request for a jury instruction, alone, is not enough to preserve the right of appeal for failure to give the instruction. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1325-26 (9th Cir. 1993). Counsel's concerns raised at informal conference also carry no weight. *See* Trial Tr. Day 4 at 586-87 ("[T]his is your opportunity to make a record as to any objections to the Court's proposed charge to the jury. . . . [O]ur informal sessions were not on the record, so you need to restate any concerns you expressed at that

**MEMORANDUM DECISION AND ORDER - 5**

time or they will have been waived."). Accordingly, Mr. Cairns has the burden to show plain error.

The Court is not persuaded that there was an error in the instructions given. Although the "use of a model jury instruction does not preclude a finding of error," *Bearchild v. Cobban*, 947 F.3d 1130, 1142 (9th Cir. 2020), the causation language in the Court's instruction closely follows the Ninth Circuit's Model Instruction 11.1 and accurately states the law with respect to ADEA claims. *Compare* MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 11.1 (NINTH CIRCUIT JURY INSTRUCTIONS COMM. 2017) ("the Plaintiff has the burden [to prove] …. the defendant [*took adverse action against*] the plaintiff because of [his/her] age, that is, the defendant would not have [*taken adverse action against*] the plaintiff but for [his/her] age"), *and* 29 U.S.C. § 623(a)(1) (making it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age"), *and Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act. . . . [A] plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."), *with* Inst. 10, Dkt 102 at 13-14 ("[Cairns] must prove that, because of his age, the School District [took adverse employment action]. That is, he must

prove that but for his age, the School District would have either renewed his Retired Administrator Contract or hired him for another position.").

Mr. Cairns does not actually dispute that the instruction accurately stated the law. Rather, he argues that the instruction was erroneous because the jury's question about causation demonstrates that "the jury was clearly confused by the original instruction on ADEA causation given by the Court." *Pl. Br.*, Dkt. 112 at 4. But jury questions do not demonstrate error. Indeed, such a standard would be entirely unworkable. Because the jury instruction correctly stated the law of ADEA causation, the Court finds that there was no error.

To the extent that Mr. Cairns challenges the Court's response to the jurors' question submitted during their deliberations, his argument is similarly unpersuasive. This objection was also waived because Mr. Cairns did not object on the record. The answer given was an appropriate exercise of the Court's "wide discretion" in these matters. *Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003) (A trial judge is the "governor of the trial" and enjoys "wide discretion in the matter of charging the jury."). Contrary to Mr. Cairns's argument, the supplemental instruction did not introduce a "new theory" about but for causation. Although that understanding could be inferred from the initial instruction, the supplemental instruction clarified that under ADEA and accompanying caselaw,

**MEMORANDUM DECISION AND ORDER - 7**

events can, but do not necessarily, have multiple but for causes. Moreover, although Mr. Cairns now argues that the Court deprived him of the ability to argue the additional instruction to the jury, he did not make that request during either formal or informal conference. While that argument may have been helpful to Mr. Cairns's case, he is not entitled to that opportunity under the Federal Rules of Civil Procedure or Ninth Circuit caselaw.

The Court will not grant Mr. Cairns's motion for a new trial on the basis of jury instructions.

### B.  False and Surprising Testimony about Performance

Mr. Cairns next argues that the District did not indicate that his performance played any part in the decision not to offer him a new Retired Administrator Contract before trial. He urges the Court to grant his motion for a new trial because, according to him, the District elicited false, surprise testimony about the quality of his performance and the role that played in his employment outcome.

Mr. Cairns does not specify precisely which testimony he contends was sufficiently false and surprising to warrant a new trial. On the one hand, he claims that "at trial, the District's evidence seemed to be exclusively dedicated to developing a new theory that in fact, the entire reason for not continuing to employ Cairns was because his performance was lacking." *Pl. Br.*, Dkt 110 at 3. He

MEMORANDUM DECISION AND ORDER - 8

highlights testimony on a variety of issues from Dr. Sanders, Mr. Boland, and Mr. Jarnigan that he argues was false. *Id.* at 8-9. On the other hand, however, he says that his performance was not litigated "until the last witness at trial," Mr. Jarnigan. *Pl. Br.*, Dkt. 112 at 3. Therefore, before addressing Mr. Cairns's argument about false and surprising testimony, the Court will probe how, exactly, Mr. Cairns's performance was put at issue during the trial.

### 1. Background

During Mr. Cairns's case in chief, he introduced the issue of his performance through evidence and the testimony of several witnesses. On the first day of trial, Mr. Cairns introduced and testified about his positive performance evaluations from Principal Bob Devine. Tr. Day 1 at 50-55. He also testified that Mr. Jarnagin gave him verbal positive feedback on multiple occasions, telling him he was doing a "great job" and that his "stellar performance" was "far better" than the two previous athletic directors. Tr. Day 1 at 80-82.

On the second day of trial, George Boland agreed that "the District is not in any way contesting his performance." Tr. Day 2 at 209. On cross-examination, Mr. Boland explained that he was not contesting Mr. Cairns's performance because "it was my understanding that his performance was satisfactory. . . . Satisfactory is kind of a minimum standard as opposed to exemplary" Tr. Day 2 at 228-29; *see*

**MEMORANDUM DECISION AND ORDER - 9**

*also* Tr. Day 2 at 243.

Mr. Jarnagin's deposition was read to the jury. He agreed that he "didn't have any problems with [Mr. Cairns's] performance." Jarnagin Dep., Dkt. 110-5 at 24, 80. He also said that his decision not to give Mr. Cairns a new Retired Administrator Contract "wasn't an issue of [Cairns] being a strong team member." Jarnagin Dep., Dkt. 110-5 at 80. He stated that when he told Mr. Cairns he would not be offering him another Retired Administrator Contract, he explained to Mr. Cairns that "job performance was not unsatisfactory." Jarnagin Dep., Dkt. 110-5 at 26.

Next, Tammie Sorensen took the stand and testified that Mr. Cairns "did a great job" as athletic director. Tr. Day 2 at 252. She said that Mr. Cairns made sure things got done the right way, was well-organized, and communicated well with colleagues, students, and parents. Tr. Day 2 at 252.

On the third day of trial, the District began its case in chief by calling Mr. Boland. He reiterated that Mr. Cairns's performance was satisfactory. Tr. Day 3 at 343. He also noted that Principal Devine had "expressed some frustration at absenteeism associated with" Mr. Cairns's role at the INL, but "didn't indicate a dissatisfaction" with Mr. Cairns's performance of his responsibilities. Tr. Day 3 at 343-44. Mr. Boland further testified that in the two or three years prior to his

decision not to offer Mr. Cairns a new Retired Administrator's Contract, he "had seen some indications of perhaps some disillusionment and disengagement," such as "not attending certain District functions or meetings." Tr. Day 3 at 355. He noted that

> At one football game, for example, rather than being on the sideline or in the stands where the students were or something like that, he was sitting on the outside lane of the track with his wife in a chair, so somewhat removed from both the stands and the activities on the sideline, just seemed to be disengaged with what was going on.

Tr. Day 3 at 355. Later, in his rebuttal, Mr. Cairns testified that he was on the track at a couple of football games because that was "where my building principal asked me to be," not because of a disengaged attitude. Tr. Day 4 at 575-76.

After Mr. Boland, Bob Devine testified that when Mr. Cairns was his assistant principal, Mr. Devine was at times frustrated "that he would use his time for at work that I felt maybe were more appropriate for after work"—specifically, his role at the INL. Tr. Day 3 at 411. On cross-examination, Mr. Devine testified he made a positive comment on Mr. Cairns's evaluations concerning Cairns's STEM efforts within the school, not the INL. Tr. Day 3 at 414-16.

Finally, Mr. Jarnagin took the stand. He testified that he "frequently" had opportunities to observe Mr. Cairns's work "at athletic events and activities for the School." Tr. Day 4 at 530. Based on his observations, Mr. Jarnagin thought Mr.

**MEMORANDUM DECISION AND ORDER - 11**

Cairns "did a fair job" and was "not substandard" but "n[o]t stellar" and "kind of a midlevel performer." Tr. Day 4 at 531, 534. He further testified that in his conversations with Mr. Cairns, Mr. Jarnagin had told him that "he did an okay job." Tr. Day 4 at 531. Mr. Jarnagin said that in his estimation, when the hiring committee interviewed Mr. Cairns, "[h]e came across as—again, kind of like his performance—an okay candidate." Tr. Day 4 at 541.

According to Mr. Jarnagin, he did not cite Mr. Cairns's performance as a reason for his decision not to offer him a new Retired Administrator Contract. Rather, when he informed Mr. Cairns of the decision, he told Mr. Cairns that his performance was "acceptable" and "not substandard." Tr. Day 4 at 533-34.

On cross-examination and redirect Mr. Jarnagin discussed an announcement that he sent out to faculty about Mr. Cairns's upcoming departure. In the announcement, he said that Mr. Cairns served the school "well for many years" and "has exceptional skills and attributes that have grown students' academics and fostered an environment on the west side of unity and collaboration." Mr. Jarnagin testified that the comments were sincere. Tr. Day 4 at 552. However, he said that he sent out the announcement because "I didn't want to hurt Mr. Cairns' feelings. He has given a lot of time and effort to District 91. He did not have the best reputation as an administrator, and I didn't want to send him out feeling bad about

**MEMORANDUM DECISION AND ORDER - 12**

what happened." Tr. Day 4 at 570.

In sum, the jury heard evidence that Mr. Cairn's performance was excellent and that it was merely satisfactory. Although the issue was significant, it cannot fairly be said that it was the District's evidence was "exclusively dedicated" to developing a theory about Mr. Cairn's performance.

### 2.  Analysis

In light of the way that the issue of performance actually unfolded at trial, the Court concludes that Mr. Cairns's briefing paints an overly simplified picture of the positions that the District took. Mr. Cairns claims that before the trial—in depositions, summary judgment briefing, and pretrial submissions—the District took the affirmative position that Mr. Cairns's performance played no role in the decisions. Then, he says, the District sandbagged him at trial by arguing that he was passed over because his performance was lacking. The Court disagrees with Mr. Cairns on both points.

On the one hand, in discovery and dispositive motion briefing the District did not affirmatively take the position that Mr. Cairns's performance "had nothing to do with the District's decision not to renew his contract or its decision not to select him for the Skyline position." *Pl. Br*. Dkt. 110 at 5. Mr. Cairns does not show he had a reasonable basis to draw such a broad conclusion.

**MEMORANDUM DECISION AND ORDER - 13**

In both his deposition and at trial, Mr. Jarnagin consistently testified that Mr. Cairns's performance was satisfactory, but that he wanted to consider potentially better candidates. Mr. Jarnagin's statements that he was truthful in the departure announcement and that Mr. Cairns's performance was not a problem did not support the inference that Mr. Cairns's performance played *no role* in the decisions not to offer him a new Retired Administrator Contract or hire him for other positions. The same is true for Mr. Boland's testimony at trial and during his deposition that Mr. Cairns's performance was satisfactory and was not an issue. And Mr. Cairns's argument that "further discovery regarding Cairns or his performance was unnecessary" because Mr. Baczuk did not have a master's degree is similarly unpersuasive, because credentials are plainly distinguishable from performance quality and capacity. *Pl. Br.* Dkt. 112 at 3.

If the issue of Mr. Cairns's performance was indeed as critical to his litigation strategy as he now argues, his counsel could have and should have inquired into the issue further when deposing Mr. Jarnagin, Mr. Boland, and other key witnesses. The District is not to blame for Mr. Cairns's unreasonable expectations of the way that the issue of performance would unfold at trial. *See, e.g.*, *Wolde-Giorgis v. Christiansen*, 438 F. Supp. 2d 1076, 1080 (D. Ariz. 2006) ("Any failure to know about [certain testimony] prior to trial is due to Plaintiff's

lack of due and reasonable diligence and not any deception on the part of Defendants.").

Furthermore, discovery, dispositive motion briefing, and pretrial submissions did not offer a sufficient basis for Mr. Cairns to believe going into trial that "the only open question was whether the word 'longevity' was a proxy for age." *Pl. Br*. Dkt. 110 at 1. In a general sense, Mr. Cairns clearly understood that was not the case. It is basic logic that in an employment case, the plaintiff's job performance will be discussed at trial. In fact, Mr. Cairns's case in chief included substantial evidence about his positive performance. To the extent that Mr. Cairns was then surprised that the District introduced its own evidence about his performance, that surprise is unreasonable and unwarranted.

On the other hand, during trial the District took a nuanced position with respect to Mr. Cairns's performance. All the witnesses testified that his performance was satisfactory. There was no evidence or argument that the District, in essence, decided to get rid of Mr. Cairns because his performance was lacking. Rather the evidence showed that when Mr. Cairns's one-year Retired Administrator Contract ended, the District decided to look for candidates who might be more than satisfactory. As the District's counsel put it during closing argument, Mr. Cairn's performance did not convince other administrators to

**MEMORANDUM DECISION AND ORDER - 15**

advocate for him. In short, Mr. Cairns's performance was adequate, but satisfactory performance was not enough to persuade the District to offer him a new contract.

To the extent Mr. Cairns was surprised by this position, that "[s]urprise does not warrant a new trial." *Brady v. Chemical Constr. Co.*, 740 F.2d 195, 200 (9th Cir. 1984). Mr. Cairns had "a fair hearing," including "ample opportunity" to rebut, impeach, and cross-examine the allegedly surprising or false testimony. In short, the Court is not persuaded that evidence regarding his performance so unfairly surprised Mr. Cairns that he is entitled to a new trial.

### C. Weight of Evidence

Cairns argues that the verdict was contrary to the clear weight of the evidence if the Court puts aside the so-called "false testimony, evidence contrary to the District's judicial admissions, and testimony contrary to the Rule 30(b)(6) deponent." *Pl. Br*. Dkt. 110 at 17. For the reasons discussed previously—namely, that the Court disagrees with Mr. Cairns that he was subject to "trial by ambush"—the Court will not do so but will consider all the evidence.

Mr. Cairns does not present a meaningful argument that, "on the entire evidence [the Court] is left with the definite and firm conviction that a mistake has been committed." *Landes Constr.*, 833 F.2d at 1371-72. Casting his argument in its

best light, Mr. Cairns contends that the clear weight of the evidence demonstrated that age was a "but for" cause of the decision not to offer him a new Retired Administrator Contract. The Court disagrees.

At trial, Mr. Jarnagin and Mr. Boland testified repeatedly that Mr. Jarnagin was motivated by longevity. Tr. Day 2 at 277; Tr. Day 4 at 535. Mr. Jarnagin explained that by longevity he meant a "strong, cohesive team over a period of time." Tr. Day 4 at 545. Mr. Boland testified that as Superintendent and a former principal, he agreed that it was important to build a team that can work together on different issues that might arise over a period of time. Tr. Day 2 at 227-28.

The jury could have interpreted the evidence to conclude that longevity, *i.e.* building a strong, cohesive team for the future, was a legitimate non-discriminatory purpose. For instance, Mr. Boland agreed with Mr. Cairns's counsel that Mr. Jarnagin's statements created the inference that Mr. Jarnagin "wanted someone with more longevity than Bill." Tr. Day 3 at 400. However, Mr. Boland clarified that the inference arose from the fact that "Bill had already retired and was on a one-year contract." Tr. Day 3 at 400. From the evidence presented, the jury could reasonably have concluded that Mr. Jarnagin was looking to build a strong team over time, and that Mr. Cairns, as an employee who was *already retired*, did not meet those criteria.

**MEMORANDUM DECISION AND ORDER - 17**

At bottom, all Mr. Cairns does is highlight evidence that conflicts with the jury's verdict. *See Pl. Br.* Dkt. 110 at 18-19. And indeed, a reasonable factfinder might have concluded that longevity was a proxy for age. But the evidence at trial supported both conclusions. In the Court's estimation, the evidence supported the verdict that the jury reached. But regardless, when the jury is presented with competing evidence, it is not the Court's role to substitute its own view for the conclusions the jury reached after hearing all the competing evidence. *See Roy v. Volkswagen of America*, 896 F.2d 1174, 1176 (9th Cir. 1990).

## ORDER

IT IS ORDERED that:

1. Plaintiff's Motion for a New Trial (Dkt. 110) is **DENIED**.

DATED: February 28, 2022

B. Lynn Winmill
U.S. District Court Judge